UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSE GARCIA, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 03 C 8605<br>) |
| MICHAEL SHEAHAN, DWIGHT ANDERSON, NEIL GIBBONS, KATHLEEN WATSON, JANE DOE #1, ROSE MCBRIDE, RUBY WILLIS, SARAH GODBOLT, CHIEF OPERATING OFFICER OF CERMAK HEALTH SERVICES OF COOK COUNTY | )<br>)<br>)<br>)<br>)<br>) Judge Mark Filip<br>)<br>) Magistrate Judge Geraldine Soat Brown<br>) |
| Defendants. | ) |

## PLAINTIFF'S RESPONSE TO RULE 11 MOTION

This brief is submitted in response to the Rule 11 Motion of certain defendants[1] and sets out the reasons why Plaintiff has respectfully declined to withdraw his amended complaints. A substantially identical explanation was provided, by letter, to those defendants on July 11, 2005, together with a detailed timeline of communications between the parties, a copy of which is attached as Exhibit A. They elected to file the Rule 11 Motion without taking any of the facts, set out herein and in that letter, into account.

As the Court has pointed out, until this point counsel for the plaintiff has consistently endeavored to maintain cordial and professional communications with the

---

[1] To date, no appearance, and no Motion, has been filed on behalf of the Chief Operating Officer of Cermak Health Services.

State's Attorney and, whenever possible, to prevent unnecessary impact on innocent by-standers, such as officers not directly involved in the events in suit. This was complicated, however, by the need to sue individuals, and by the fact that plaintiff had no independent means of identifying the individuals responsible. Moreover, records which would have permitted counsel for plaintiff, once appointed, to investigate and corroborate her client's allegations were exclusively in the possession of Defendant Sheahan and related entities, and remain there to this day.

In an effort to work around these difficulties, we requested, <u>and counsel for Sheriff Sheahan repeatedly promised</u>, copies of relevant reports, logbooks, medical records, and other information, together with the identities and addresses of the responsible individuals. Counsel represented <u>to the court</u>, during several status conferences, that that exchange would take place. In spite of regular reminders (some of which are detailed on the attached timetable), counsel have provided only fragmentary information, and none at all regarding Mr. Garcia's treatment, or lack thereof, in the prison infirmary and the individuals who were responsible for it. It was only on the very last day before the statute of limitations arguably ran on several aspects of Mr. Garcia's claim that the State's Attorney's office provided any information at all concerning the identities of the second-shift nurses whose conduct is in question here, and that only after we had given up on a response from him and had filed a somewhat hastily assembled pair of complaints. The State's Attorney's last-minute identification of four nurses, only one or two of whom will turn out to belong in this case, made it necessary for us to file amended complaints before the file-stamping had dried on our first ones, (and thoroughly puzzled the Clerk). Under the circumstances, and

2

lacking the documentary materials that we should have received long since, it was not possible to completely resolve the factual inconsistencies which continue to appear in the current complaints. For these problems, and for the fact that we have now sued several individuals who will almost certainly turn out to have been innocent bystanders, the State's Attorney and Sheriff Sheahan are entirely responsible.

On June 16, nine days after their answer date, the State's Attorney filed on behalf of some of the defendants in this matter a Motion for Enlargement of Time to serve a Rule 11 motion. It was, however, not until June 28 that he actually served a proposed Rule 11 motion on counsel for the Plaintiff, and when it arrived it differed significantly from the one that had been described to the court. The remainder of this memorandum will address the specific allegations contained in the motion for extension of time and the Rule 11 motion.

1.   **The "Suability" of Cermak**

Defendants' motion for enlargement of time asserted that, "it should be noted that Defendants' counsel advised Plaintiff's attorney that it is improper to sue Cermak because Cermak is a non-suable entity." Plaintiff disputes that assertion. Counsel for Sheriff Sheahan did repeatedly advise that "Cermak" was an independent entity over whom he, as counsel to Sheriff Sheahan, had neither control or influence. The question of Cermak's "suability" simply never arose between us. Upon it becoming clear that Sheriff Sheahan contended that "Cermak" was responsible, not only for the medical facility adjacent to the Cook County Jail, but also for the "infirmary" inside the jail in which, or next to which, Mr. Garcia was abandoned after his injury, I expressed the intention to sue the staff members responsible for his treatment, and we went to a great

3

deal of effort to identify them. Had I intended to sue the hospital itself, as one usually does when complaining about nursing care in a private setting, we could have avoided the filing of the Amended Complaint in the case in Judge Andersen's court, and the filing of the Second Amended Complaint in this Court

But whether Cermak was "suable" or not, and whether or not the State's Attorney told me so, are all irrelevant to this motion, because we did no such thing. We did, in fact, sue the nurses, not the entity, and we also sued the individual occupying the position of COO of the facility.[2] The motion for enlargement of time left the gratuitously false impression with the Court that, notwithstanding a friendly warning, I had frivolously filed a legally untenable claim. I have requested that the State's Attorney withdraw that false statement, and he has not done so.

## 2. The Filing of Two Lawsuits

Before answering the original Complaint on this case, the State's Attorney, on behalf of Sheriff Sheahan, filed and briefed a motion to dismiss based on the Prisoner Litigation Reform Act. He alleged that, pursuant to that law, Plaintiff's suit was barred because he was imprisoned at the time he filed suit and had failed to exhaust "available administrative remedies" before doing so. Plaintiff pointed out that it was the burden of the defendants to establish, among other things, that such remedies were, indeed, available. The Court denied the motion to dismiss, but counsel asserted the matter again as an affirmative defense, and it is still in the case.

---

[2] Again, seeking to avoid inflicting collateral damage, we sued by title, as caselaw allows, but I am reliably informed the individual actually exists, regardless of the legal status of the facility, and is amenable to suit, either in an official or personal capacity in cases such as this one which allege mismanagement of the agency and systemic and individual misconduct by its employees.

4

In the meantime, however, Plaintiff had been released from prison and was entitled to file suit without being restricted by the PLRA, which applies in terms only to suits filed while the plaintiff is imprisoned. I discussed with the State's Attorney the fact that Plaintiff's release largely mooted the PLRA defense. In fact the 7th Circuit has held that the PLRA is not a defense to a suit filed by a former inmate. Kerr. v. Puckett, 138 F.3d 321 (7th Cir. 1998); Ford v. Johnson, 362 F.3d 395 (7th Cir., 2004)). Nevertheless, the State's Attorney declined to withdraw the defense.

It is well-established that, in suitable circumstances and barring an improper motive, a plaintiff is entitled to maintain more than one suit for the same cause of action, although he can, of course, obtain only one recovery. International Insurance Company v. Certain Underwriters at Lloyd's London et al. (N.D. Il. 1992) 88 C 9838, 1992 U.S. Dist. Lexis 6164, citing Kellerman v. MCI Telecommunications Corp., 112 Ill. 2d 428, 493 N.E.2d 1045 (1986) and A.E. Staley Mfg. Co. v. Swift & Co. 84 Ill.2d 245, 419 N.E.2d 23 (1980). This is such a circumstance.

The motion for extension of time referred only vaguely to the double filing as "further frustrating matters" without explaining why it was grounds for an extension of time. The Rule 11 Motion asserts that the filings are "repetitive," which is certainly true, and "unnecessary," which is not. Given that Plaintiff's original suit was subject to an arguable defense that would not apply to his second one, and that counsel had refused waive the defense, Plaintiff's second filing was appropriate and necessary.

The Rule 11 Motion also seeks recovery under 28 U.S.C. § 1927, which applies to attorneys who "unreasonably and vexatiously" "multipl[y] the proceedings." Its supporting brief, however, does not address vexatious intent, or even the

5

unreasonableness of the double filing, and thus utterly fails to demonstrate that §1927 should apply here.

The nuisance to counsel and their clients, which is no doubt genuine, is self-inflicted. It is certainly not grounds for sanctions.

3. **Inconsistencies Between Mr. Garcia's Complaint and His Deposition**

The Rule 11 Motion describes inconsistencies between Mr. Garcia's amended complaint and his deposition testimony given two weeks later as further grounds for sanctions. This complaint is bootless for a number of reasons.

The first question is which pleading the Motion is directed to. Rule 11 applies to either unrepresented parties or counsel who sign pleadings without having made a reasonable investigation of the truth of the factual assertions therein. Since only counsel for Plaintiff, and not Plaintiff himself, were served with the proposed motion, and since that proposed motion appears to apply to the recent Second Amended Complaint, signed by me, it is apparently my own reasonable belief and reasonable investigation that are at issue.

If we have misconstrued the motion, however, it should be noted that that Mr. Garcia's conduct, in filing the original complaint herein, is judged by a considerably different standard for Rule 11 purposes. The 1983 Advisory Committee's Note to Rule 11 pointed out that "[a]lthough the standard is the same for unrepresented parties, who are obliged themselves to sign the proceedings, the court has sufficient discretion to take account of the special circumstances that often arise in *pro se* situations." Fed. R.

Civ. P. 11 Advisory Committee's Note (1983). The Seventh Circuit has held that documents prepared by a *pro se* litigant are held to a lower standard than those prepared by counsel. Hilgeford v. People's Bank, 776 F.2d 176 (7th Cir. 1985), cert. denied, 475 U.SD. 1123 (1986). Sanctions against *pro se* litigants have usually been awarded only in cases of repeated actions indicating abuse of the court system. See, i.e., Reinert v. O'Brien, 805 F. Supp. 576, 579 (N.D. Ill. 1992)("This court adheres to the principle that *pro se* parties shall be sanctioned under Rule 11 only after successive attempts to pres a wholly frivolous claim"). If the conduct counsel objects to is Mr. Garcia's initial filing of his complaint, Judge Aspen's statement of the standard excludes that action in terms.

If, on the contrary, the request for sanctions is directed against counsel, not the party, the charge is equally insupportable. The sort of minor, and generally not outcome-determinative, discrepancies the motion identifies are simply not grounds for sanctions, even if they really were discrepancies and even if I should have foreseen them.

The Motion parses Mr. Garcia's deposition in an effort to claim that minor discrepancies between his testimony and our complaint somehow constitute a Rule 11 violation. Specifically, it argues that "with three different accounts from Plaintiff ranging from one hour to over seven hours spent in the dispensary, no truth can be established." Motion, p. 6. Since it is not the purpose of a Rule 11 motion to "establish" "truth," that argument misses the point.

The most authoritative evidence on the length of time Mr. Garcia's treatment was delayed – Sheriff Sheahan's own logs - establish that Mr. Garcia remained in the

7

dispensary from about 6:30 in the morning through mid-afternoon. Copies of log-book pages, provided in discovery in this case, which objectively establish these facts and on which I relied in drafting the amended complaint are attached to this response. Mr. Garcia has testified that during the time in question he was slipping in and out of consciousness and in great pain. It would not affect the seriousness or credibility of his claims if his sense of time were distorted. The fact that, at his deposition, he claimed to have lain abandoned and wounded for five hours instead of eight[3] does not suggest a bad faith or meritless claim. Since the Sheriff's own records clearly show that Mr. Garcia was left untreated for far longer than he should have been, the Sheriff can hardly construct a defense, let alone a claim of frivolity, on the slight differences between his testimony and his complaint.

Counsel have identified a genuine discrepancy in the question of whether Mr. Garcia was forced to walk to the dispensary or was carried on a mattress, which we are still investigating. But regardless of which assertion turns out to be true, the confusion suggests no sanctionable offense. Rule 11, which requires a pre-filing inquiry by counsel, does not require investigation to the point of certainty. <u>Nemmers v. United States</u>, 785 F.2d 628, 632 (7th Cir. 1986). Indeed, allegations need not be perfected at their inception. <u>Foster v. Michelin Tire Corp.</u>, 108 F.R.D. 412, 414 (C.D. Ill. 1985). A record that is fully developed after discovery may indicate facts elicited after a

---

[3] Counsel's own mathematics are not exemplary; the complaint alleges at least an <u>eight hour</u> delay in treatment, not the seven counsel complains of, nor can his attempt at belittling Garcia's claim that, while he waited, he was mocked by a guard win him any points. While a guards' laughing at an inmate, by itself, will rarely make a constitutional violation, his laughing at a reasonable plea for necessary medical care, made by an inmate left helpless in a hallway for hours, demonstrates precisely the "conscious disregard" of the inmate's rights that should easily support a civil rights claim, and should be taken seriously by the Sheriff and his lawyers.

reasonable inquiry were erroneous, but such discrepancies are not the province of a Rule 11 motion. Id. at 416.

Even if Mr. Garcia's original Complaint is faulty and the corrections officer placed Mr. Garcia on a mattress instead of "dragging" him, this minor factual discrepancy should not result in sanctions against counsel. See Haverstick Enterprises v. Financial Federal Credit, 803 F. Supp. 1251 (E.D. Mich. 1992). Rule 11 allows an attorney to rely upon his client's statements when it is reasonable to do so. Apostol v. Landau, 1994 WL 110172, at *2 (N.D. Ill. 1994). The Motion identifies no misconduct on my part worthy of a Rule 11 sanction. it is worth pointing out that Mr. Garcia's deposition, on which counsel rely, took place after the filing of the amended complaint. Nowhere do counsel demonstrate that I failed to conduct the requisite pre-filing inquiry, and nowhere does he claim that Mr. Garcia's claims are frivolous or brought in bad faith. At best, the Motion asserts factual inconsistencies that may result in failure of his constitutional claim. But the focus of Rule 11 is on conduct, not result. Mars Steel Corp. v. Continental Bank, N.A., 880 F.2d 928 (7th Cir. 1989)(en banc). Whether Mr. Garcia's constitutional claims are weak or strong or turn out to be supported by a preponderance of the evidence has no bearing on whether, at the time of filing, a reasonable inquiry was conducted.

We look forward to seeing counsel raise the fact that Mr. Garcia under-estimated the time he was left untreated, when he cross-examines him at trial, but we would submit that such points are not grist for a Rule 11 motion.

**4.     Other Matters**

In our response to counsel's proposed Rule 11 motion, we had raised the facts, set out above, which demonstrate that the Motion is frivolous, and stated that we would

consider filing a reciprocal Motion for Sanctions if the first one was not withdrawn. We also raised various outstanding discovery lapses on the part of counsel for Sheriff Sheahan, some of which contributed to the uncertainty and confusion about which he now complains. We have reiterated to counsel that a motion to compel discovery would ensue unless he promptly remedies the identified defects in discovery, which so far he has ignored. We may be compelled to file that motion in the near future if that non-compliance persists, but have offered counsel one final chance to resolve the matter first.

On consideration of the Court's expressed preferences, we will not be filing a "reciprocal" sanctions motion, but urge the Court to form its own conclusion whether this Motion is well founded and whether some remedy in favor of Plaintiff and his counsel should be imposed by the Court *sua sponte*.

Respectfully submitted,

**JOSE GARCIA, Plaintiff**

By: _____
One of his Attorneys

Mary Cannon Veed
Jenifer H. Caracciolo
Arnstein & Lehr LLP
120 South Riverside Plaza
Suite 1200
Chicago, Illinois 60606
(312) 876-7100

10

## CERTIFICATE OF SERVICE

Mary Cannon Veed, an attorney, certifies that she served a true and correct copy of this Response to Rule 11 Motion, addressed to:

>Patrick Smith
>Don Pechous
>Assistant State's Attorney
>Civil Actions Bureau
>500 Richard J. Daley Center
>Chicago, IL 60602

by fax and by mail, depositing the same in the U.S. Mail at 120 South Riverside Plaza, Chicago, Illinois 60606 on July 22, 2005, before 5:00 p.m. with proper postage prepaid.

Mary Cannon Veed

## Timeline: Rule 11 Motion

| Date | Event |
|---|---|
| 11/26/03 | Pro Se complaint filed |
| 2/12/04 | Order appointing MCV |
| 3/30/04 | First status conference (after reassignment to Filip) |
| 4/?/04 | MCV TC Don Pechous reporting appointment. Pechous agreed to provide incident reports and help ID officers, and to obtain "Cermak" medical records. |
| 4/27/04 | MCV letter to Don Pechous, requesting ID of officers. Pechous indicates would probably waive service and promised incident report as soon as prepared |
| 6/1/04 | Status; permission to serve defendant |
| 6/2/04 | MCV called Smith re waiver of service and need for records, especially "Cermak" |
| 6/10/04 | MCV voice mail and letter to Smith. He declines to waive service. MCV repeats request for incident reports and medical records. |
| 6/11/04 | Sheahan served |
| 6/30/04 | Smith requests add'l time to answer |
| 7/2/04 | Received CCDOC incident report. Smith requests 30-day extension of time to plead; agreed. MCV requests better identification of inadequately identified or illegible officers listed on report. Also requests CCSPD (Special Projects) report referenced in logs. Also Requests reports from "infirmary" (Cermak) |
| 7/19/04 | MCV TC and letter to Smith objecting to attempted *ex parte* interview of client. |
| 7/31/04 | Sheahan files MTD |
| 8/10/04 | MCV letter to Smith providing Stroger records. Repeats request for Cermak records. Conforms oral statement that Smith has identified responsible officers and will provide names. Repeats July 2 request to identify illegible references in incident report. Requests copy of alleged grievance procedure. |
| 11/5/04 | MTD denied. |
| 11/24/04 | Sheahan files answer |
| 12/14/04 | Sheahan amends Answer – left out affirmative defenses |
| 12/15/04 | Sheahan serves discovery |
| 1/3/05 | JC repeats requests of 7/2/04 |
| 1/4/05 | We serve interrogs and R/P seeking ID of responsible officers, etc. |
| 2/9/05 | Smith requests settlement demand prior to compliance with deposition requests. We provide same. |
| 2/28/05 | TC Smith to follow up settlement offer and reminder re scheduling officer deps. |
| 2/24/05 | JC sends follow up demand for compliance with discovery, noting need to identify John Doe defendants |
| 3/2/05 | TC Smith re scheduling deps of officers |
| 3/7/05 | Sheahan serves discovery responses and Rule 26 d/c |

Exhibit A to Response to Rule 11 Motion

| | |
|---|---|
| 3/9/05 | Anderson dep held |
| 3/10/05 | Scheduled deps of Young and Bates. Call from Smith to JC in AM announces Smith can't produce them, notwithstanding representations, because he has not contacted them. |
| 3/10/05 | MCV letter to Smith, objecting to cancellation of deps, objecting to non-production of relevant Cermak records despite subpoena, objecting to interrogatory answer claiming that it would be "unduly burdensome" to substantiate defendant's assertion that it possessed an effective grievance procedure, and that further such information is irrelevant and confidential. Notes that same response made to 9 of the 19 interrogs. Notes impending S/L date and demands deps of all officers on relevant shifts in light of refusal of Sheahan to identify responsible officers. |
| 3/15/05 | JC letter confirming agreed production of 5 officers and a nurse |
| 3/15/05-3/28/05 | Numerous TC MCV and Smith reminding re promise to identify Cermak nurses. |
| 3/23/05 | Other officer deps taken. Sheahan fails to produce nurse Watson. |
| 3/29/05 | Letter to Allegretti (Smith sick) enclosing new and amended complaints and requesting decision whether CC State's Attorney will appear for new defendants. |
| 3/29/05 | Plaintiff files new suit avoiding PLRA issue and amends complaint. After complaint filed, Allegretti calls to ID Cermak nurses. Plaintiff files further amendments to two complaints with newly disclosed names |
| 3/31/05 | JC letter repeating request made during deposition for documents identified during dep that should have been produced earlier |
| 4/14/04 | Garcia gives deposition |
| 4/28/05 | MCV Letter to Smith repeating request for service addresses for new defendants. Smith instructs that service be made at CCDOC. |
| 4/29/05 | New defendants attempted to be served; amended complaints served by mail. CCDOC refuses service. Smith provides new addresses |
| 5/5/05 | Summons reissued and served on new defendants. |
| 6/7/05 | Answer date for new defendants |
| 6/16/05 | Defendants request add'l time, stating that Rule 11 motion relating to the suability of Cermak is pending. Allowed to 7/15. (No similar request in 2nd case; default persists.) |
| 6/28/05 | Defendants serve proposed Rule 11 motion. (21 days expires 7/19). Proposed motion does not mention suability issue. |
| 7/18/05 | Status hearing set |

Key:
    MCV: Mary Cannon Veed, Arnstein & Lehr
    JC: Jenifer Caracciolo, Arnstein & Lehr
988677v2

Exhibit A to Response to Rule 11 Motion

# COOK COUNTY DEPARTMENT OF CORRECTIONS
## INCIDENT REPORT

Please Print All Information                                      Effective: 10/99

| Field | Value | Field | Value |
|---|---|---|---|
| Division / Department: | Div. 8. RTU. | Living Unit/Location: | Div. 8 RTU. E1. |
| Incident Date: | 04 April. 03 | Incident Time: | 0500 |
| Weapon(s) Involved | ☐ Yes ☒ No | Were Restraints / Force Used | ☐ Yes ☒ No |
| Property Damaged | ☐ Yes ☒ No | I.A.D. Notified | ☐ Yes ☒ No |
| ADO Notified | ☐ Yes ☒ No | Injuries / Hospitalization | ☒ Yes ☐ No |
| Arrest(s) Made | ☐ Yes ☒ No | Was Contraband Found | ☐ Yes ☒ No |

**Name of Detainee(s) / Staff Involved    ID/Star #**

D. Anderson  #015
Garcia, Jose   2003-0024016

**Witnesses to Incident    ID/Star#**

### Statement of Facts: (Narrative)

At approximatly 0500 resident Garcia, Jose 030024016 advised R/O that he fell out of bed and hurt his back. At approx 0600 resident Garcia while in the despensary then told R/o he was attacked by resident Colbert, Tom 020099489.

**EXHIBIT B**

CI# 04-05-018
CF# 0400170
ATT# 14

Signature & Star # of Reporting Employee: D. And— 4015    Date: 4 April 03    Time: 0610

Signature & Star # of Supervisor: [signature]    Date: 4 April 03    Time: 0615

### Administrative Assessment

NURSING STAFF REPORTED NO VISIBAL MARKS IN GARCIA. INMATE Tom Colbert THE ALLEDJED ATTACKER COULD NOT BE INTERVIEWED SINCE HE WAS GONE TO COURT. LT. BOTICA WAS NOTIFIED OF SITUATION. R/o Gibbons INTERVIEWED INMATES IN E-1 AND THEY SAID THERE WAS NO PHYSICAL ALTERCATION ON loom. GARCIA IN dispensary CURRENTLY BEING OBSERVED. CCSPD NOTIFIED.

Signature & Star# of Supervisor: [signature] 969    Date: 4 APRIL 03    Time: 0622

Part I - Executive Director (white)         Part III - Assistant Executive Director (pink)
Part II - Superintendent (canary)           Part IV - File (goldenrod)

## Activities

| | | DIV. | DU CBM | | | RTU | 3 | DU | CM |
|---|---|---|---|---|---|---|---|---|---|
| | RTU | | | | Total | 15 | 0 | | |
| Visiting | 15 → Tiers D1, D2 E2 | 6 | | | Total | 2 | 6 | ( | ( |
| Attorney Visits | 2 | | | | Total | 2 | 0 | | |
| Special Visits | 2 P.R | | | | Total Visits | 26 K's | | | |
| | 19 | 6 | 0 | 1 | Supervisor: SGT. MILTON | | | | |
| Recreation | Tiers Div. 3 - 27 k's | | | | Supervisor: N/A | | | | |
| Commissary | Tiers DNA | | | | Supervisor: N/A | | | | |
| Barber/Beauty Shop | Tiers DNA | | | | Supervisor: N/A | | | | |
| Linen Exchange | Tiers AS NEEDED | | | | Supervisor: N/A | | | | |
| Uniform Exchange | Tiers AS NEEDED | | | | Supervisor: N/A | | | | |
| Fire Drill | Tiers NONE SCHEDULED | | | | Supervisor: N/A | | | | |
| Escape Drill | Tiers NONE SCHEDULED | | | | Supervisor: N/A | | | | |

### Other Activities (Shows, Church, Tours, Special Events, etc..)

| Type of Activity | Living Units | Total Participants |
|---|---|---|
| Barber Shop | 2 Day Unit | 2N - 23 K's |
| Indoor Recreation | 2 Day Unit | 2N - 38 K's |
| Indoor Recreation | RTU | C1 - 16 K's  C2 - 28 |
| Law Library | RTU | 12 K's |

### Searches (List Type - Area, Living Unit)

| Type of Search | | Location of Search | Total Searched | |
|---|---|---|---|---|
| Strip | LINE | Cermak - 2 Sou. - D.U | 24 K's - 38 | 20 - |
| Strip | LINE | RTU C1, C2 | 42 | 44 |
| Strip | LINE | Div. 3 - B2 | 35 K's | 32 |

### Unusual Incidents / Comments

0707 - COUNT CLEARED for 11-7 SHIFT. /Ofc. Hendrix reassigned to
1034 - MIDDAY COUNT CLEARED
1100 - R/O J. BROWN ON LUNCH
1200 - R/O J. BROWN LUNCH RELIEF IN CENTRAL CONTROL.
1245 - Mail Delivered to Div 3 Security
1310 - Jose Garcia Seen in ER Transfered to CCH @ 1400

CI# 04-05-018
CF# 0400170
ATT# 16

RU · CM · Div.3 · DU
Ending Count: 418 · 115 · 259 · 121    Count Cleared At: _____ hrs.
Watch Commander's Signature: _____    Star# 113

CCDOC